374 P.2d 875

James J. McKEEVER, as father of Mary Agnes McKeever, deceased, Appellant,

v.

PHOENIX JEWISH COMMUNITY CENTER, an Arizona corporation, Appellee.

No. 6897.

Supreme Court of Arizona,

En Banc.

Oct. 3, 1962.

Raineri & Cracchiolo, by J. C. Raineri, Phoenix, for appellant.

Langerman & Begam and Cavanagh & O'Connor, by Ferris W. Bellamak, Phoenix, for appellee.

UDALL, Vice Chief Justice.

The plaintiff brought this action against defendant for the alleged wrongful death of his minor daughter. The jury returned a verdict in favor of the defendant and plaintiff has appealed.

The facts disclose that James McKeever and his family were paid up members in the Phoenix Jewish Community Center and that on May 28, 1957, in exercise of membership privileges, he and his two sons, his nine year old daughter, his ten year old daughter Mary Agnes (now deceased), and a young girl friend of Mary Agnes's were using the swimming pool belonging to the Center.

Plaintiff left the small children in the shallow end of the pool (being separated from a deeper end by a rope supported by several buoys) and went to a grassed area some 100 feet away, and out of sight of the youngsters to lie down. Shortly thereafter and without regard for his caution to the children to stay in the safe zone, Mary Agnes with two young girl friends proceeded to the portion of the pool at the deep side of the safety rope. In their play the girls jumped into the deep water that was over their heads and successfully climbed back to the bank to jump again several times. It appears from the evidence that no one but Mary Agnes's nine year old sister saw these children in this game although there were roughly 40 other people and a lifeguard at the pool. The number of jumps they made or the length of time they engaged in this activity is not clear, but an older brother testified that approximately five minutes passed from the time he saw the three little girls in the shallow part of the pool until he knew of the accident. One of the children who had been jumping with Mary Agnes testified that only about five minutes passed from the time she left Mary Agnes at the scene of their jumping until she heard of the accident. During that period Mary Agnes was left alone at that part of the pool, her two friends having returned to other areas. Immediately thereafter her body was discovered on the bottom of the pool by two other swimmers.

A qualified lifeguard who was on duty during that time had just finished a routine inspection by walking around the pool and observing the general activities thereabouts. The three children jumping into the water at the deep water area did not meet his attention during that tour, possibly because they appeared to be reasonably able swimmers. Although the testimony is in conflict as to Mary Agnes's ability to swim, the other two children had that skill. Upon returning to his regular duty station at the north side of the pool the lifeguard was

called to assist in the rescue of Mary Agnes at the far side where she was being brought from the water. The evidence shows that he got to the scene as soon as was humanly possible and that in taking proper charge and supervision he made every possible effort to revive the child. All necessary and required safety devices for the protection of the swimmers were on hand if needed.

The plaintiff has set forth two assignments of error regarding the court's instructions to the jury. First he contends the court erred in refusing to instruct as to the doctrine of res ipsa loquitur. He claims that under the facts in the case the court should have given his requested instruction relating to the doctrine.

■ The doctrine of res ipsa loquitur is simply a rule of circumstantial evidence and gives rise to an inference of responsibility for an injury. Stewart v. Crystal Coca-Cola Bottling Co., 50 Ariz. 60, 68 P.2d 952 (1937) ; Pickwick Stages Corp. v. Messinger, 44 Ariz. 174, 36 P.2d 168 (1934); Eisenbeiss v. Payne, 42 Ariz. 262, 25 P.2d 162 (1933). There is no magic attached to the utterance of the phrase. In going forward with his proof plaintiff must still prove proximate cause and show that no injury would have resulted but for some sort of negligence on the part of defendant. Stewart v. Crystal Coca-Cola Bottling Co., supra; Pickwick Stages Corp. v. Messinger, supra. See also Flora v. Bimini Water Co., 161 Cal. 495, 119 P. 661. In addition he must prove that the instrumentality causing the injury was within the exclusive control of the defendant at the time of the injury. Stewart v. Crystal Coca-Cola Bottling Co., supra; Pickwick Stages Corp. v. Messinger, supra; Speidel v. Lacer, 2 Cal.App.2d 528, 38 P.2d 477 (1934).

■ Plaintiff's witness Dr. Daniel J. Condon testified that a drowning could result from very little water on the back of a person's throat causing a spasm of the glottis which closes off the airway. This could occur within a matter of seconds. Consequently, several factors other than defendant's alleged negligence could conceivably be said to contribute to a child's death at a swimming pool. One such factor could be a parent leaving a young inexperienced child without immediate and direct personal supervision in an inherently dangerous body of water where drowning is not only possible but may be expected in the event of misjudgment on the part of the child. Even a chance fall by a child unnoticed from a pool's edge into the water could be the cause. Before a court would be obliged to instruct as to the doctrine of res ipsa loquitur the plaintiff must come forth with evidence that would eliminate such conjectures. Stewart v. Crystal Coca-Cola Bottling Co., supra; Sawyer v. People's Freight Lines, 42 Ariz. 145, 22 P.2d 1080

(1933). Otherwise defendant's negligence is not established as the proximate cause. The evidence in this case failed to do this.

■ Plaintiff must also establish the defendant's exclusive control of the instrumentality causing the injury. Stewart v. Crystal Coca-Cola Bottling Co., supra; Pickwick Stages Corp. v. Messinger, supra; Speidel v. Lacer, supra. The instrumentality here was the swimming pool and all its accessories such as boards, ladders, beach area and ropes. Defendant's control is shared with all who use the facility. Some forty people were using it on the day of Mary Agnes McKeever's death. The owner is expected to keep the pool in a safe condition, to have certain safety devices available for use, and to make constant inspection with qualified and sufficient personnel. Collins v. Riverside Amusement Park Co., 61 Ariz. 135, 145 P.2d 853 (1944). In this way he is to exercise control of the instrumentality. But to make him an absolute insurer of all patrons would be prohibitive. Hecht v. Des Moines Playground & Recreation Association, 227 Iowa 81, 287 N.W. 259 (1939). The users themselves must be responsible to some extent for their own acts. Where young inexperienced children are involved the parents must take a good deal of this burden. The owner cannot be required to govern all of their movements. To do so would require his assigning a personal lifeguard to each individual bather.

■ It is next contended the court's instruction as to unavoidable accident was erroneous. In Town & Country Securities Co. v. Place, 79 Ariz. 122, 285 P.2d 165 (1955), we said "An unavoidable accident is such an occurrence as under all the circumstances could not have been foreseen, anticipated, or avoided in the exercise of ordinary care." See also Gray v. Woods, 84 Ariz. 87, 324 P.2d 220 (1958) and Beliak v. Plants, 84 Ariz. 211, 326 P.2d 36 (1958).

In 65 C.J.S. Negligence § 21, we read:

"Unavoidable accident does not necessarily mean one which it is physically impossible in the nature of things for defendant to have prevented, but one in which ordinary care and diligence could not have prevented the happening of the thing that did happen * * *."

The death of Mary Agnes McKeever conceivably could have been avoided, but the evidence was such that a jury reasonably could conclude the defendant was exercising ordinary care and there was some other cause of death than an act or omission by defendant. An experienced and qualified lifeguard was at his duty station attending to his responsibilities. He had at his disposal the necessary equipment if he needed it to effect a rescue. He was

at the scene of the rescue immediately upon being called. The fact that he was not there to pull her from the bottom of the pool is certainly no evidence of negligence on his part. He got there as fast as he could and did all that seemed humanly possible after learning of the tragedy. He tried to revive the child in every conceivable way. Because of the shortness of time in which this accident must have occurred nothing more could be expected from him.

The theory of unavoidable accident is a very plausible explanation for the death of the child. The evidence justifies the court instructing the jury accordingly. Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071 (1954); Eldredge v. Miller, 78 Ariz. 140, 277 P.2d 239 (1954); Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799 (1953); Butane Corp. v. Kirby, 66 Ariz. 272, 187 P.2d 325 (1947).

We conclude that the court did not commit error in refusing to give plaintiff's requested instruction regarding the doctrine of res ipsa loquitur nor was it error to give defendant's requested instruction regarding unavoidable accident.

Judgment affirmed.

STRUCKMEYER and LOCKWOOD, JJ., and ROBERT O. ROYLSTON and FRANK X. GORDON, Jr., Superior Court Judges, concur.