640 P.2d 851

ROCKY MOUNTAIN FIRE AND CASUALTY CO., a Washington corporation, Appellant,

v.

BIDDULPH OLDSMOBILE, an Arizona corporation; Winnebago Industries, Inc., a foreign corporation; Chrysler Corporation, a foreign corporation, Appellees.

No. 15332.

Supreme Court of Arizona, In Division.

Jan. 14, 1982.

Rehearing Denied Feb. 17, 1982.

Udall, Shumway, Blackhurst, Allen, Bentley & Lyons, P. C. by Steven H. Everts, John H. Lyons, Mesa, for appellant.

Black, Robertshaw, Frederick, Copple & Wright, P. C. by John N. Norris, Phoenix, for appellee, Biddulph Oldsmobile.

Lawrence O. Anderson, John S. Schaper, Phoenix, for appellee, Winnebago Industries, Inc.

Renaud, Cook & Videan, P. A. by William R. Mettler, Jr., William W. Drury, Jr., Phoenix, for appellee, Chrysler Corp.

GORDON, Vice Chief Justice:

Seeking damages allegedly suffered from the destruction of a new motor home, the Bryants brought this action on the theories of strict liability, negligence, and breach of warranty.

In June, 1974 the Bryants purchased a new Winnebago motor home from Biddulph Oldsmobile, a dealer. The electrical system on the vehicle had been manufactured by Chrysler Corporation. Biddulph did repair work on the electrical system before the formal purchase and also when readying the motor home for delivery to the Bryants.

The motor home continued to experience electrical problems after delivery to the Bryants. On a trip to Indiana the home lost all power and came to a complete stop. While attempting to restart the engine, Bryant noticed sparks, burned wires, and melted connectors under the dashboard. The record indicates that Bryant returned the motor home to Biddulph approximately six times, and repairs were made on the electrical system.

In December, five and a half months after the motor home was purchased, Bryant and his six-year old son went fishing at San Carlos Lake. The motor home was parked one hundred feet from the water's edge. Because of the chill in the morning air, Bryant turned on the furnace in the home for the first time and returned to the shoreline to clean the morning's catch. Ten minutes later, Bryant noticed that the generator that operates the furnace had turned off. Suddenly the horn began blaring and the main engine of the Winnebago began to turn over. As he neared the home Bryant observed smoke billowing from the front

end around the front tires. Before a fire extinguisher could be retrieved from the boat, the windows of the home blew out. Bryant hurriedly yanked open the door and aimed the extinguisher at the smoke filled interior. Realizing that his efforts were in vain, Bryant unhooked his boat trailer, and he and his son stood by as the Winnebago burned to the frame.

The Bryants brought suit against the dealer Biddulph and the manufacturer Winnebago on theories of strict liability, breach of warranty, and negligence. Winnebago filed a third party complaint against the manufacturer of the electrical system Chrysler Corporation. Prior to trial, Rocky Mountain Fire and Casualty Company, the insurer of the motor home, paid the Bryants in full for their damages and, therefore, was substituted as the plaintiff at the trial. The trial judge granted defendants/appellees' motions for directed verdicts at the close of the plaintiff/appellant's case and judgment was entered. Appellant Rocky Mountain filed a timely notice of appeal, and we accepted jurisdiction pursuant to Ariz.Const. Art. 6, § 5(3) and Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

The issue in this case is if the trial court improperly granted appellees a directed verdict on the theories of strict liability, breach of warranty, and negligence.

After examining all the evidence this Court holds that the trial court erred in granting a directed verdict in favor of all appellees on strict liability in tort and appellee Biddulph on breach of warranty. We further hold the trial court did not err in granting a directed verdict in favor of all appellees on negligence and appellees Winnebago and Chrysler on breach of warranty.

■ A directed verdict may only be granted where there is no evidence introduced that "would justify a reasonable person returning a verdict for the opposing party." *Matson v. Naifeh*, 122 Ariz. 360, 362, 595 P.2d 38, 40 (1979); *accord Smith v. Chapman*, 115 Ariz. 211, 564 P.2d 900 (1977). A directed verdict admits the truth of all the evidence of the party opposing the mo-

tion including all reasonable inferences that could be drawn from the evidence. *Byrns v. Riddell, Inc.*, 113 Ariz. 264, 550 P.2d 1065 (1976).

"It is well settled that a motion for a directed verdict admits the truth of all competent evidence introduced by the party opposing the motion, including all reasonable inferences to be drawn therefrom. \* \* \* If, considering all the facts and circumstances, there is a reasonable likelihood that reasonable men may reach different conclusions, the question of fact in issue is to be decided by the jury. [Citations omitted.]"

*Reader v. General Motors Corp.*, 107 Ariz. 149, 154, 483 P.2d 1388, 1393 (1971).

■ The appellate court must view all the evidence in the light most favorable to the party who opposed the motion. *Jackson v. H. H. Robertson Co., Inc.*, 118 Ariz. 29, 574 P.2d 822 (1978); *W. R. Skousen Contractor, Inc. v. Gray*, 26 Ariz.App. 100, 546 P.2d 369 (1976).

## STRICT LIABILITY

■ Our Legislature has embraced the concept of strict liability in tort. See A.R.S. § 12–681 to 686. This Court has approved the doctrine as found in § 402(A) of the Restatement (Second) of Torts (1965). *Reader v. General Motors Corp.*, 107 Ariz. 149, 483 P.2d 1388 (1971); *O. S. Stapley Co. v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968). To establish a prima facie case of strict liability, the burden is upon the plaintiff to show the following: the product is defective and unreasonably dangerous; the defective condition existed at the time it left defendant's control; and the defective condition is the proximate cause of plaintiff's injuries or property loss. *Amburgery v. Holan Division of Ohio Brass Co.*, 124 Ariz. 531, 606 P.2d 21 (1980); *Reader, supra; Vineyard v. Empire Machinery Co., Inc.*, 119 Ariz. 502, 581 P.2d 1152 (App. 1978). Strict liability theory does not rest on traditional concepts of fault; therefore, the plaintiff does not have to establish that the defendant was negligent. The theory extends liability to manufacturers, includ-

ing manufacturers of component parts, W. Prosser, *Law of Torts* § 100, at 664 (4th ed. 1971), as well as the dealer or retail seller of the product. *Sullivan v. Green Manufacturing Co.*, 118 Ariz. 181, 575 P.2d 811 (App. 1978).

■ In the present case significant evidence was presented indicating that the motor home was defective. A new motor home with fewer than 10,000 miles should not burst into flames within six months of purchase. Several repair receipts issued by Biddulph, the retail seller, and entered into evidence show that the Chrysler electrical system required work prior and subsequent to the purchase of the motor home. The jury heard Bryant testify that he observed burned wires on his trip to Indiana. In addition, immediately prior to the fire, the main engine of the vehicle turned over and the horn blew.

Admittedly none of the evidence directly proves a defect, but the plaintiff is limited to circumstantial evidence because the motor home is not available for inspection. "The plaintiffs must be permitted to rely upon circumstantial evidence alone. There will seldom be a case based upon strict liability where a person will be able to testify from his personal knowledge that a particular product was sold in a certain defective condition. A requirement of direct evidence would effectively deny the theory of recovery of which we approved in *Stapley, supra.*"

*Reader*, 107 Ariz. at 154–55, 483 P.2d at 1393–94.

This Court concludes that reasonable people could have found that the product was sold in a defective condition.

Appellee Winnebago interposed a defense that strict liability theory is only available if personal injuries have been sustained. In this instance plaintiffs' only damages were due to the destruction of the chattel, the motor home. Restatement (Second) § 402(A) was originally intended to make a cause of action available to plaintiffs that would avoid the restraints of warranty theory. The language of § 402(A) indicates

that it was also intended to cover property damages:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, *or to his property* * * *." (Emphasis added.)

Arizona case law has restricted the doctrine of strict liability in that purely commercial losses are not recoverable. *Beauchamp v. Wilson*, 21 Ariz.App. 14, 515 P.2d 41 (1973).

Appellees mistakenly interpret *Beauchamp* as holding strict liability theory inapplicable if no personal injury has been sustained. In *Beauchamp*, the defects did not cause physical harm to *persons or property*. *Beauchamp* does not foreclose recovery for damages to property and is limited to cases where the plaintiff is claiming commercial losses only.

"With the extension of strict liability beyond food, and in particular to products likely to cause harm only to property * * physical harm to property began to be included; and there is now general agreement that there may be recovery not only for damage to the defective chattel itself * * * but also to other property in the vicinity * * *."

Prosser, *supra*, § 101, at 666.

"There is no merit in defendants' argument that the [strict liability] rule applies only in cases resulting in personal injury. It is settled that the doctrine of strict liability applies to physical harm to person or property. (*Seely v. White Motor Co.*, 63 Cal.2d 9, [45 Cal.Rptr. 17, 403 P.2d 145]; *Fentress v. Van Etta Motors*, 157 Cal.App.2d Supp. 863, [323 P.2d 227]; *Mack v. Hugh W. Comstock Associates*, 225 Cal.App.2d 583, [37 Cal.Rptr. 466]; Rest.2d Torts, § 402A)."

*Gherna v. Ford Motor Co.*, 246 Cal.App.2d 639, 649–650, 55 Cal.Rptr. 94, 101 (1966).

■ We adhere to the rule enunciated in *Beauchamp*. Lost profits or lost opportunities are not recoverable under strict liability in tort. Therefore, if the motor home had a commercial use, such as leasing, appellant could not claim lost profits under strict liability. We further hold that damages to property are recoverable under strict liability in the absence of personal injury.

In the case before us it was error to direct a verdict for appellees Biddulph, Chrysler, and Winnebago. Admitting the truth of all the evidence presented by appellant and assuming all reasonable inferences therefrom, there is a likelihood that a reasonable person could have returned a verdict for the plaintiff. The bulk of the evidence suggests that the fire began in the electrical system manufactured by Chrysler and repaired by Biddulph. Nor did the evidence presented at the trial preclude the possibility that Winnebago also was at fault. Winnebago manufactured the motor home and held it out as its product. The motor home may have left Winnebago's hands in a defective condition unreasonably dangerous to the consumer. Where and why the fire that consumed the vehicle began are questions of fact that should have been presented to the jury under strict liability theory.

## NEGLIGENCE

■ Appellant alleges that appellees were negligent. The pleadings are not specific, but presumably appellant contends that Winnebago and Chrysler were negligent in the design and/or manufacture of the motor home and Biddulph was negligent in repairing the motor home. "In Arizona, to successfully maintain an action for the tort of negligence, the plaintiff must show that the defendant had a duty to protect the plaintiff from the injury of which he complains, that defendant failed to perform that duty and that such failure proximately caused the plaintiff's injury." *Arizona Public Service Co. v. Brittain*, 107 Ariz. 278, 280, 486 P.2d 176, 178 (1971).

In this instance Winnebago and Chrysler had a duty to design and manufacture with due care so that the resulting product did not ignite without cause. Biddulph had a

duty to perform repairs in a reasonably competent manner. The fire caused injury to appellant resulting in damages. Appellant, however, is unable to establish a prima facie case of negligence to get to the jury because of the lack of any concrete evidence of which party breached its duty. Appellant, cognizant of this flaw in his position, argues that this is a proper case for the application of the doctrine of res ipsa loquitur.

There are four conditions that must be established before this Court will apply the doctrine of res ipsa loquitur, and the propriety of utilizing the theory is assessed on a case-by-case basis. *Jackson v. H. H. Robertson Co., Inc.*, 118 Ariz. 29, 574 P.2d 822 (1978).

Assuming the truth of all of the appellant's evidence as must be done in reviewing the propriety of granting a directed verdict, appellant has not satisfied the condition that the incident must be caused by an instrumentality within the *exclusive control* of appellees. Appellant further has not satisfied this Court that this accident is "of a kind which ordinarily does not occur in the absence of some one's negligence." *Jackson*, 118 Ariz. at 31, 574 P.2d at 824.

> " 'The doctrine applies only where the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence and, in the light of ordinary experience the occurrence would presumably not have happened if those who had the exclusive management or control of the agency or instrumentality alleged to have caused the injury, had exercised proper care.' [Citation omitted.]
>
> "*A fire is not the type of accident which results only from someone's negligence.* It is unnecessary for us to enumerate the various possible causes of the subject fire, which may have begun before, during or after Mr. Funk's presence on the boat, in order to rule out the doctrine of res ipsa loquitur." (Emphasis added.)

*Blair v. Saguaro Lake Development Co.*, 17 Ariz.App. 72, 76, 495 P.2d 512, 516 (1972).

This Court chooses not to extend the doctrine of *res ipsa loquitur* to a case such as this. Therefore, it was not error to grant a directed verdict as to the three appellees on the issue of negligence.

### BREACH OF WARRANTY

■ The trial court granted a directed verdict against the appellant under breach of express and implied warranty theory. Appellees correctly note that appellant did not enter the express warranty, oral or written, into evidence as was his burden to do. A directed verdict, therefore, for the appellees was correct under express warranty theory.

■ Appellant further alleges a breach of implied warranty of merchantability under A.R.S. § 44–2331. Under the Uniform Commercial Code, as adopted in Arizona, sellers warrant that the goods they sell are merchantable in that they are fit for the ordinary purposes for which the goods are intended and would pass without objection in the trade. Our opinion in *Flory v. Silvercrest Industries, Inc.*, 129 Ariz. 574, 633 P.2d 383 (1981), is dispositive of this issue as against Winnebago and Chrysler. *Flory* precludes a breach of warranty action under the U.C.C. against a manufacturer not in privity with the plaintiff. Because privity does not exist between appellant and Chrysler or Winnebago, manufacturers, the directed verdict was correctly granted in their favor on breach of warranty theory. Appellant did not allege a common law breach of warranty for which privity between the manufacturer and the consumer is not required. *See Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981).

■ Privity, however, exists between Biddulph, the retailer, and appellant, the consumer. It was error to grant a directed verdict under breach of warranty theory as to Biddulph.

The granting of directed verdicts for all appellees on strict liability in tort and for

appellee Biddulph on breach of warranty was error. We reverse these rulings and remand to the trial court for further proceedings consistent with this opinion.

Affirmed in Part, Reversed in Part, Remanded With Directions.

HAYS and CAMERON, JJ., concur.