**J. Stanley FRY and Beverly Fry, Plaintiffs and Appellants,**

v.

**DUCE SPORTING GOODS, INC., a Utah Corporation, Defendant, Third-Party Plaintiff and Respondent,**

v.

**STARFIRE INDUSTRIES, INC., a Utah Corporation and Hardin Marine, Third-Party Defendants and Respondents.**

**No. 14095.**

Supreme Court of Utah.

March 29, 1976.

Carman E. Kipp and J. Anthony Eyre, of Kipp & Christian, Salt Lake City, for plaintiffs and appellants.

Dean E. Conder and Stephen L. Henriod, of Nielsen, Conder, Henriod & Gottfredson, Salt Lake City, for Duce Sporting Goods, Inc.

Paul N. Cotro-Manes, of Cotro-Manes, Warr, Frankhauser & Beasley, Salt Lake City, for Starfire.

W. Brent Wilcox, of Moyle & Draper, Salt Lake City, for Hardin.

ELLETT, Justice:

Fry entered into a written conditional sales contract to buy a motor boat from Duce. The boat did not measure up to

Fry's expectations, and he sued for rescission and for damages for alleged breach of express and implied warranties. Duce counterclaimed for unpaid balances on the contract and filed a third-party complaint against Starfire and Hardin Marine, the manufacturers of the boat and motor.

The case was tried to the court sitting without a jury and at the end of plaintiff's case the court granted Duce's motion to dismiss the complaint. Thereafter a judgment was entered on the counterclaim in favor of Duce for the amount due on the contract. Fry appeals.

Fry and one Holding, a salesman for Duce, were close friends. Fry had a motor boat which he used for waterskiing. He desired a larger and more powerful boat, and so Holding undertook to help him find one. Duce sells boats but did not have one suitable for the desired purposes. Fry and Holding canvassed other dealers in boats and Fry ultimately located a hull at Starfire's which seemed adequate for his purposes. He asked his friend Holding to see if Starfire could install a 440-cubic-inch Chrysler engine in the boat. Holding arranged a meeting between Fry and Starfire at which time Starfire told Fry that the desired engine was no longer available. They discussed a particular Jacuzzi jet propulsion mechanism and the agent of Starfire told Fry that he thought the unit would propel the boat for waterskiing purposes.

Starfire then contacted Hardin Marine (in California) and was told that the Jacuzzi mechanism was available and would perform properly with a 455-cubic-inch Oldsmobile engine. Fry had seen a 454-cubic-inch Chevrolet engine in a friend's boat and he asked Starfire to inquire if Hardin Marine could supply that unit. Starfire found out that the Chevrolet motor was available, and could be used with the jet propulsion unit. It cautioned Fry that the engine was a very high performance engine which would not have a warranty. The Chevrolet engine develops 450 horse power while the 455-cubic-inch Oldsmobile engine only develops 295 to 325 horse power.

Mr. Fry chose the Chevrolet engine and the Jacuzzi jet mechanism, and asked that they be installed in the hull of the boat which he selected. He then requested Duce to order the boat and sell it to him.

There was too much power generated by the Chevrolet engine and air instead of water would get into the jet pump when the engine was accelerated, with a result that the speed of the boat was curtailed. The boat could not be accelerated fast enough to pull water-skiers out of the water properly; therefore Mr. Fry sought to rescind his contract with Duce after he had used the boat for two years, and had run the motor for some 74 hours.

In Duce's conditional sales agreement, which Fry signed, there is this provision: "This agreement embodies the whole agreement between the parties and the debtor agrees that no representation, warranty or guaranty, has been made to him which is not expressly set forth herein." No warranties are set forth in the document.

Mr. Fry does not claim that any agent of Duce made any false representations to him, but he seems to think that because Mr. Holding was present with him when Starfire phoned and reported that Hardin Marine said the Chevrolet engine and the Jacuzzi jet pump would properly propel the boat, that Duce is somehow bound by the statements made.

It seems to us that Mr. Fry, being an experienced boatman and an avid water-ski enthusiast, selected the boat and motor of his own accord, and assumed all responsibility for the performance thereof. Except for a lack of fast acceleration upon starting, the boat is satisfactory. Mr. Fry alone chose the Chevrolet engine after he was told that the Oldsmobile engine was the proper one. He has no just grounds to claim that Duce is at fault in any particular in this matter. It merely arranged for financing the purchase of a boat and

motor chosen by Mr. Fry from the manufacturers thereof.

The judgment is affirmed. Costs are awarded to the respondent.

HENRIOD, C. J., and CROCKETT, TUCKETT and MAUGHAN, JJ., concur.